**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-96 (RDM)** |
| **v.** | : | |
| | : | |
| **BRIAN SCOTT MCGEE and** | : | |
| | : | |
| **JEREMY CHRISTIAN HARRISON,** | : | |
| | : | |
| **Defendants.** | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Brian McGee to three years of probation with a condition of 14 days of intermittent incarceration, 60 hours of community service, and $500 in restitution, and Defendant Jeremy Harrison to three years of probation with a condition of 60 days of home confinement, 60 hours of community service, and $500 in restitution.

**I.      Introduction**

Defendant Brian McGee, a retired servicemember of the U.S. Armed Forces from Auxvasse, Missouri, and Defendant Jeremy Harrison, an employee in a millwork company from Hernando, Florida, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States

McGee and Harrison each pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, probation with a period of incarceration for McGee and a period of home confinement for Harrison is appropriate because both defendants: (1) entered the Capitol at the Senate Wing Door, the initial breach point on January 6, amid signs of the violent breach that were still fresh and obvious; (2) minimized their conduct in interviews with law enforcement, claiming that they were allowed inside the Capitol; and (3) in the days or months after January 6, both defendants posted on social media to advocate for further politically motivated violence. McGee deserves a more serious sentence because he was a more active user of social media, expressed pride in taking part in the riot and advocated, in the most violent of terms, for "revolution" and the forcible removal of politicians who did not share his political viewpoints.

The Court must also consider that the defendants' conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances support a sentence of probation with conditions of 14 days of intermittent incarceration for McGee and 60 days of home confinement for Harrison.

---

Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.  Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 32 (Statement of Offense), at 1-7.

*Defendants' Roles in the January 6, 2021 Attack on the Capitol*

Sometime prior to January 6, McGee developed an online correspondence on Twitter with Harrison's wife. McGee was a frequent poster of political content on Twitter, and attracted over 12,000 Twitter followers. McGee and Harrison's wife shared political views, and together they made plans to attend the "Stop the Steal" rally on January 6, reserving two hotel rooms in Crystal City, Virginia. On January 4, 2021, McGee traveled to Washington, D.C. from his home in central Missouri, stopping for one night in Kentucky at a family member's residence. On January 5, 2021, Harrison and his wife drove from Florida to the D.C. area, where they met up with McGee at the hotel. On the morning of January 6th, McGee and the Harrisons traveled together to the Ellipse to watch former President Trump's speech. After watching the speech, McGee and the Harrisons walked together towards the U.S. Capitol.

As they approached the Capitol building, McGee and Harrison saw the signs of conflict resulting from the riot. Approaching the West Plaza, they saw that law enforcement was using tear gas and pepper spray to defend against the rioters. As they walked up the Northwest steps, they saw rioters climbing along the balustrades, and at the landing, saw knocked over bike racks. As they approached the Senate Wing Door, they saw law enforcement officers in riot gear who were vastly overwhelmed and outnumbered by the size of the mob. They heard the incessant blaring of the fire alarm by the Senate Wing Door and saw the broken glass in the doors and windows. They saw rioters climbing into the Capitol building through the broken windows. Harrison's wife

decided to remain outside. Harrison and McGee, by contrast, ignored the warning signs and continued forward inside the U.S. Capitol.



*Image 1: Opensource photo shows McGee approaching the U.S. Capitol as chemical agents filled the air*

At 2:24 p.m., McGee and Harrison entered the U.S. Capitol building through the Senate Wing Door, about 10 minutes after it was initially breached. They remained in or near the entryway, speaking with one another and looking at their phones. Harrison and McGee exited the building after less than two minutes in order to meet up with Harrison's wife, who was still outside. Harrison and McGee spent time trying to locate Harrison's wife in the crowd. Opensource videos show the three walking away from Capitol grounds along the Pennsylvania Walkway.



*Image 2: McGee (square) and Harrison (circle) entering the Capitol through the Senate Wing Door as other rioters climbed through broken windows.*



*Image 3: Harrison (circle) and McGee (square) close to the Senate Wing Door*

*McGee's and Harrison's Social Media*

McGee is an avid user of social media, and he has used his social media accounts to demonstrate his lack of remorse for his actions on January 6 and to inject violent political discourse into online forums. Due to the nature of his postings, his Twitter account had been suspended nine times before January 6. Law enforcement was not able to retrieve McGee's pre-January 6 Twitter postings after his account was disabled. After a suspension soon after the January 6 attack, McGee made the decision to switch to an alternate social media platform, Gab.com, that was more permissive of McGee's violent rhetoric.

On January 9, McGee, under his username "Purebred Brian," posted on Gab a picture of himself on January 6 in front of the Capitol with the caption:

> "One of the coolest, most patriotic things I've ever been a part of! Just got back to Central Missouri from the DC rally. Took a week of no notice leave from my job and drove for 2 days to get there. The next morning, I found my +12K Twitter account was suspended because they have no use for the truth."



*Image 4: McGee's post about January 6 from his Gab account.*

McGee's subsequently posted thousands of times on Gab. McGee frequently bragged about his participation in the January 6 riot, spread misinformation designed to make the police sound complicit in the riot, and promised that he'd "have no problem making the trip again," though next he might arrive "locked and loaded."

Similar to McGee, Harrison also used his social media accounts to support political violence. Whereas McGee was a prolific writer of violent content on Twitter and Gab, Harrison was active on Parler and "echoed" the violent posts of other accounts.

*McGee's Interview with the FBI*

McGee was interviewed by the FBI in August 2021. During the interview, McGee likened his entry into the Capitol as a "general admission concert where you buy a ticket and then you get as close to the stage as you can go." McGee repeatedly minimized the warning signs that he should not enter the U.S. Capitol, and falsely claimed that the police defending the Capitol were "oblivious to the crowd," did not tell protestors that they were not permitted to enter, and were welcoming and fist bumping protestors as he entered.

Rather than take responsibility, McGee blamed police for allowing the rioters to enter and for not sending out an emergency phone alert earlier in the day. McGee claimed that he and Harrison left the Capitol building, not because he understood that he should not be inside, but to find Harrison's wife who was by herself outside.

*Harrison's Interview with the FBI*

Harrison was interviewed by FBI agents in June 2022. Harrison admitted seeing tear gas being deployed by police outside the Capitol on January 6, but like McGee, claimed that he thought he was allowed inside the building. Harrison admitted that once he was inside the Capitol and heard the chaos, he knew the decision to enter was wrong and he made the decision to leave.

*The Charges and Plea Agreement*

On February 8, 2023, the United States charged McGee and Harrison by criminal complaint with violating 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building or Grounds, and 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. On February 9, 2023, law enforcement officers arrested McGee in Jefferson City, Missouri and

Harrison in Ocala, Florida. On March 20, 2023, the United States charged McGee and Harrison by a four-count Information with violating the same four statutes. On May 8, 2023, pursuant to plea agreements, McGee and Harrison each pleaded guilty to Count Four of the Information, charging them with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. By plea agreement, McGee and Harrison each agreed to each pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

McGee and Harrison now face a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Harrison and McGee face up to six months of imprisonment and a fine of up to $5,000. McGee and Harrison must also pay restitution under the terms of their plea agreements. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days of intermittent incarceration for McGee and 60 days of home confinement for Harrison.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States*

*v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing McGee's and Harrison's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like McGee and Harrison, the absence of violent or destructive acts is not a mitigating factor. Had McGee and Harrison engaged in such conduct, they would have faced additional criminal charges.

McGee's and Harrison's conduct on January 6 was on the lesser end of the spectrum of the countless horrific events that took place that day. But both ignored the numerous warning signs – chemical agents in the air, knocked over bike racks, blaring alarms and broken windows, and still proceeded inside the U.S. Capitol. Both were inside the Capitol for less than two minutes, and spent that time talking to each other and looking at their phones before exiting the building and its grounds.

Accordingly, the nature and the circumstances of McGee's and Harrison's conduct, both on January 6 and in the months after, establish the clear need for a period of incarceration for McGee and home confinement for Harrison.

### B.  The History and Characteristics of the Defendants

McGee is a retired servicemember of the U.S. Armed Forces who had previously served this country with distinction. While McGee's military service is laudable, it renders his conduct on January 6 all the more troubling. As a former career servicemember, he was well aware that individuals do not have the right to enter restricted government buildings. In his social media, McGee frequently mentioned the oath he took to protect the United States and its Constitution. He betrayed that oath by breaking the law on January 6. Moreover, McGee's post-January 6 statements, including countless posts in which he stated he was ready to take up arms to eliminate

individuals whose views he did not share, are ominous signs that he remains willing to betray his oath in pursuit of his political goals.

Both McGee and Harrison have enjoyed stable employment and economic comfort. The prosperity they have enjoyed in their adult lives makes their shared advocacy for violence and "revolution" all the more troubling.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Defendants' statements on social media, particularly McGee's, bely any assertions of remorse. What stands out in their case, and particularly so for McGee, is that even after January 6—an attack on this country and its democratic institutions—they decided to inject even more violent invective into the political discourse of this country. McGee frequently posted on his Gab account that those who share his political views should get their guns and start a violent revolution.

He boasted repeatedly that he was proud to have participated in January 6, and if there were another political uprising in the future, he would do it again, but next time he would come to D.C. "locked and loaded." Harrison did not post as frequently as McGee, but also signaled his support for political violence on his Parler account.

The government does not have McGee's pre-January 6 Twitter posts, but his posts on Gab after January 6 frequently demonstrated his lack of remorse for the attack on the Capitol and show a strong desire for more political violence. His posts advocated taking up arms against politicians whose views he did not share and "liberals who would stand in the way." Below is a small sample of representative posts (text in bold is emphasis added):

- February 2, 2021: "I stand proudly with @realdonaldtrump. Awaiting orders, Sir! I, as well as about 75 million America loving Patriots are at your disposal and ready to act...just say the word!"

- February 12, 2021: in reply to another Gab user: "In 1979, I took an oath to protect and defend the country and the Constitution against all enemies, foreign and DOMESTIC. **DC is chock full of domestic enemies, and my oath has no expiration date.**"

- May 14, 2021: "So...Once it's proven there was fraud and cheating and the left literally stole the oval office...What is going to be done to fix it? I don't want bloodshed or a civil war, but I'm not interested in waiting till 2022 or 2024 to have the rightfully elected President calling the shots." Later, at 10:48 a.m., McGee replied to a user, saying "IMO, **It looks to me like the left, the ones against guns and don't know which bathroom to use are hell bent on starting the civil war with the right, the ones who own over 300 million weapons and over 8 trillion rounds of ammo... I'm not sure they thought this through...but I'm locked and loaded.**"

- May 16, 2021: "This America hating Son of a Bitch isn't going to be happy until he starts a full blown civil war. Word of warning for you Joe...Be real careful what you wish for...YOU JUST MIGHT GET IT." Later that day he posted "Jan 6 was an unarmed warning to the elites...You are not nearly as insulated from millions of really pissed off Americans as you think. If the Patriots have to return, it will be for some good ole-fashioned house cleaning."

- May 31, 2021: "I spent 27 years serving this great country, ensuring everyone has the right to vote...That includes those who choose to vote like a dumbass! For that reason...I have no problem with my liberal neighbors. A full blown "civil war" isn't necessary. Our problem lies with a very limited number of individuals, for example, those who participated

in the election fraud, Antifa/BLM and ALL OF THOSE INDIVIDUALS who are actively trying to not only physically but also institutionally destroy my country. **(By my count, there are less than 5000 spread throughout the country with a large concentration of them in Washington DC). If/when the "civil war" kicks off, there lies the main objective, not the average liberal on the street. That being said, I would have no problem walking through any/all of the liberals who would stand in the way of accomplishing the mission."**

- June 27, 2021: "I'm tired of hearing the "let's do it peacefully" and "contact your representatives" and "make our voices heard" and "violence never solves anything". If the Patriots had done that against England, then we would be speaking with an English accent and drinking tea. If the world had done that with Hitler, we would all be speaking German...or Japanese! Do you think we could have asked Hitler nicely to stop mass murdering the Jewish people, he would have? No, It took the rest of the world to organize, arm up and kick his ass! **VIOLENCE ABSOLUTELY DOES SOLVE THINGS! At what point do we organize, arm up and take back our country?"**

- June 28, 2021: "It's going to take "We the People" organizing, not worrying about "getting in trouble" and stepping up to take our country back. **"Onsey, twosey" will get you labeled as a "domestic terrorist" and taken out. It has to be massive organization, and it needs to start YESTERDAY!"**

- July 22, 2021: "Have they really thought this through? 'White Supremacists' with military training being put back among 75M pissed off peasants with nothing to lose but our country."

- August 9, 2022: "Not only Biden, but the ENTIRE ILLEGITIMATE ADMINISTRATION HAS TO GO."

When not advocating for the death of individuals who hold differing political views, McGee frequently bragged about his participation in the January 6 riot, spread misinformation designed to make the police sound complicit in the riot, and promised that he'd "have no problem making the trip again," though next he might arrive "locked and loaded."

- May 17, 2021: "Yup! I was there, and saw with my own eyes, Capitol police high-fiving folks as they walked through the door the cops opened for them."

- June 18, 2021: "I took a week of no notice leave from work and drove for 2 days to attend the rally in DC. I was unarmed that time. I would have no problem making the trip again...**Not so sure I'd be unarmed. Locked and loaded in Missouri....Awaiting orders."**

- July 25, 2021: "Been there, done that. Took a week of no-notice leave from my job. Drove for 2 days to attend the rally to peacefully protest with upwards of 3 million of my fellow Americans on Jan 6...didn't work. **Wouldn't hesitate doing it again, though I'm not so sure I'd be unarmed the next time."**

- July 27, 2021: "Been watching them for months. Can't wait to see Patriots organize and take our country back. **When it happens...I'll be right in the middle of it."**

The photo of McGee standing in front of the U.S. Capitol on January 6 (Image 4 above) is still the profile photo of his Gab account. McGee rejoined Twitter ("X") in April 2023, and that same photo is now the profile photo for his "X" account.

Harrison was not as prolific a user of social media as McGee, but more passively signaled his agreement with the violent views of others by "echoing" their posts on his Parler account under the username "Trump the Great." In the posts below, dated less than five days after January 6, Harrison "echoed" posts that advocated for extreme political violence.

Echoed By Trump the Great · 1 hour ago

Red Votes · @RedVotes67

1 hour ago · 👁 3915

Threatening 80 million Trump voters

with the majority of the guns

IS SUICIDE
#lalala



💬 7          18          ⬆ 76







*Images 5-6: From his Parler account, and under the username "Trump the Great," Harrison supported political violence just days after January 6*

Both McGee and Harrison should face consequences for their actions, and significant sentences are necessary to deter both from engaging in the next violent attack in support of their political goals.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL

Court must sentence McGee and Harrison based on their own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: their participation in the January 6 riot.

McGee and Harrison pleaded guilty to Count Four of the Information, charging them with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. This offense is a Class A/B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

---

BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Raul Jarrin*, 22-cr-153 (RCL), the defendant was inside the Capitol building for only 15 seconds. Similar to McGee and Harrison, there were no allegations that Jarrin destroyed property or assaulted police, but Jarrin also ignored audible and visual signs that he was not permitted to enter the Capitol. Jarrin failed to express remorse and lied to the FBI about entering the Capitol, which is similar to Harrison's and McGee's lack of candor to the FBI, and their continuing to advocate for political violence after January 6. Judge Lamberth sentenced Jarrin to 14 days of incarceration, 36 months of probation, and 60 hours of community service.

In *United States v. Michael Stepakoff*, 21-cr-96 (RC), the defendant, like Harrison and McGee, falsely claimed to not know he was not permitted to be inside the Capitol. Similar to McGee and Harrison, Stepakoff entered the Capitol as others climbed through broken windows around him, and later spread misinformation on social media glorifying January 6. Judge Contreras rejected Stepakoff's "Mr. Magoo-like character that stumbled into and through the Capitol, oblivious to the mayhem around him," and sentenced Stepakoff to two months of home confinement as a condition of 12 months of probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the

result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," and any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Harrison and McGee must pay $500 in restitution, which reflects in part the role they played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) McGee's and Harrison's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 25 (McGee) and ¶ 26 (Harrison).

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Harrison to three years of probation with a condition of two months of home detention, 60 hours of community service, and $500 in restitution, and McGee to three years of probation with a condition of 14 days of intermittent incarceration, 60 hours of community service, and $500 in restitution. These recommended sentences protect the community, promote respect for the law, and deter future crime by imposing restrictions on their liberty as a consequence of their behavior.

---

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:    _____
       Melanie Krebs-Pilotti
       Antitrust Division, Trial Attorney
       Detailed to USAO-DC
       CA Bar No. 241484
       United States Attorney's Office
       601 D Street, N.W.
       Washington, D.C. 20530
       Telephone No. 202-870-7457
       Email: melanie.krebs-pilotti2@usdoj.gov